## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-23693-JLK

JAVIER DELGADO,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1] ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

      This matter is before the Court on the parties' Cross Motions for Summary Judgment.  ECF

Nos. [12], [16].  Plaintiff Javier Delgado ("Plaintiff" or "Delgado") filed his Motion for Summary

Judgment ("Plaintiff's Motion") and Statement of Material Facts ("Statement of Facts") on July 8,

2020.  ECF Nos. [12], [13].  Defendant, the Commissioner of Social Security ("Defendant" or

"Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law

and Response to Plaintiff's Motion on August 6, 2020 ("Defendant's Motion") arguing that the

correct legal standard was applied.  ECF Nos. [16], [17].[2]  Plaintiff subsequently filed his Response

to Defendant's Motion for Summary Judgment with Supporting Memorandum and Reply to

Defendant's Response to Plaintiff's Motion for Summary Judgment.  ECF No. [18].  The Court

held a Telephonic Oral Argument on August 13, 2020.  ECF No. [19].  The Court must now

---

[1] On June 4, 2020, this matter was referred to the undersigned for all pre-trial, non-dispositive
matters, and for a Report and Recommendation on any dispositive matters.  ECF No. [8].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for
Summary Judgment, ECF No. [17], it is the same document as Defendant's Motion, ECF No. [16].

determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a review of the parties' motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED**.

## I.     BACKGROUND

On March 26, 2016, Delgado filed an application for disability and disability insurance benefits alleging an onset date of March 21, 2016.  R. at 73–75.[3]  Delgado, who was born on August 10, 1957, was fifty-eight years old at the time his application was filed.  *Id*. at 74.  The Social Security Administration ("SSA") initially denied the claim on July 25, 2016 and denied it again upon reconsideration on November 18, 2016.  *Id*. at 87–88, 102–03.  Delgado requested a hearing on January 6, 2017.  *Id*. at 125.  On July 12, 2018, Delgado, who was represented by counsel, testified at the hearing in Miami, Florida.  *Id*. at 39–62.  David Pigue, a vocational expert ("Pigue" or the "VE"), also testified at the hearing.  *Id*. at 55.  On October 30, 2018, the ALJ issued her decision denying Delgado's application which was later affirmed by the Appeals Council of the Social Security Administration ("Appeals Council").  *Id*. at 5–7, 25–33.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Delgado filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

Delgado was sixty years old at the time of the hearing.  R. at 45.  He testified that he had lung cancer stage 2, emphysema, chronic obstructive pulmonary disease ("COPD") symptoms,

---

[3] References herein to "R. at __" are to the Social Security record, the pertinent parts of which can be found at ECF No. [7].  All the page numbers to the Social Security record referenced herein refer to those assigned by the electronic docketing system as found on the top right corner of the page.

dizziness, anxiety, nervousness, depression, short-term memory loss, high blood pressure, loss of appetite, and difficulties breathing.[4]  *Id.* at 42, 184.  Delgado testified that out of all his health problems, his shortness of breath was the worst.  *Id.* at 47.  Delgado testified that he has shortness of breath every day, and he can only walk for ten minutes before having to stop.  *Id.*  Moreover, Delgado also testified as to having back pain.  *Id.* at 48.  He testified that "while standing, my back, my entire back hurts."  *Id.*  However, he has no problem sitting for long periods of time.  *Id.* at 49. Delgado also testified that he experiences dizziness several times a day.  *Id.* at 48. He cannot bend forward or sideways, squat, or kneel to reach the ground.  *Id.*  If he attempts to do so, it becomes "extremely difficult to stand up" and he gets dizzy.  *Id.*  As a result, Delgado cannot lift objects off the ground.  *Id.* at 49.  Moreover, he testified that he is only strong enough to lift a "plate" or a "glass of water" off a table.  *Id.*

Delgado also testified to having "a lot of pain in this area where the liver is."  *Id.*  On a scale of one to ten, with ten being very strong pain, Delgado rated the pain in his stomach as "an eight."  *Id.*  He takes medication for the pain several times a day, and it sometimes alleviates the pain.  *Id.* at 50.  He also takes medication for his depression and anxiety.  *Id.*  Delgado testified that his anxiety is worse than his depression and it feels "like [he's] having a heart attack."  *Id.* Delgado also testified that he is "very depressed "and spends a typical day sitting down.  *Id.* at 50– 51.  He stated he doesn't "have a will to do anything at all."  *Id.* at 51.

As to his previous work, Delgado testified that for the past fifteen years he was a manager at a warehouse.  *Id.* at 46.  His duties included overseeing employees and helping out when needed. He stated that if "[t]here was help needed, I had to help."  *Id.*  He worked standing up most of the

---

[4] Delgado listed these physical and mental conditions as part of his SSA-3368 Disability Report form.  R. at 184.  The ALJ admitted the Disability Report Form into evidence and as part of the record during the SSA hearing.  *Id.* at 42.

time and had to lift, carry, and use his arms for assembly.  *Id.* at 46–47.  On average, he lifted around eighty pounds, but no more than one hundred and fifty.  *Id.* at 47.

At the hearing, the VE classified Delgado's past relevant work as "manager warehouse," citing to Dictionary of Occupational Titles ("DOT") 184.167-114 for that job description.  *Id.* at 57.  That job is usually performed at a "light exertional" level, with a Specific Vocational Preparation ("SVP") rating of eight.  *Id.*  However, because Delgado testified that he was lifting, on average, eighty pounds, *id.* at 47, the VE determined that Delgado was performing his past work at the "heavy exertional" level, *id.* at 57.

The ALJ then asked the VE to consider a hypothetical individual with the same age, education, and past work as Delgado.  *Id.*  at 58.  The ALJ then continued by asking the VE to further assume this hypothetical individual could perform a full range of light work; only occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, crawl, and frequently balance.  *Id.* at 58–59.  Further, this hypothetical individual should have no exposure to unprotected heights and no concentrated exposure to fumes, odors, dust or other pulmonary irritants.  *Id.* at 59.  The ALJ asked whether that hypothetical individual would be able to perform Delgado's past work.  *Id.*  The VE answered that such an individual would be able to perform Delgado's past relevant work as a warehouse manager at the "light" level of exertion used to classify that position.  *Id.*  The VE noted, however, that Delgado's skills as a warehouse manager would not transfer to any other jobs requiring sedentary or light level of exertion.  *Id.*

The ALJ then proceeded to ask the VE whether that same hypothetical individual would be employable as a warehouse manager if such an individual was unable to consistently complete an eight-hour workday, and, for multiple days a week, was off-task or unavailable fifteen percent

or more of the day or left early.  *Id.* at 60.  The VE answered that such an individual would be precluded from employment as a warehouse manager.  *Id.*  Next, the ALJ asked whether a hypothetical individual who could perform work at the light exertional level and remained on task—but required an at-will sit/stand option—would be able to work as a warehouse manager. *Id.*  The VE answered that an individual that required any kind of sit/stand option, even if reasonable, would be precluded from working as a warehouse manager.  *Id.*  Finally, the ALJ asked whether a hypothetical individual who needed to be absent from work two or more days in a typical month would be employable.  *Id.* at 60–61.  The VE answered that such an individual would be precluded from employment in the national economy due to excessive "absenteeism."  *Id.* at 61.

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  At step one, the ALJ must determine whether the claimant is currently

unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work[6] given his Residual Functional Capacity ("RFC");[7] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C.  The ALJ's Decision

On October 30, 2018, the ALJ concluded that Delgado had not been under a disability within the meaning of the Social Security Act.  R. at 25–33.  In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

[6] Past relevant work means work performed as the claimant actually performed it or as it is generally performed in the national economy within the past fifteen years.  20 C.F.R. § 404.1560(b)(1)–(2)

[7] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations."  20 C.F.R § 416.945(a).

of claims.  *Id.* at 27–33; *see* 20 C.F.R. § 416.920(a), *Frame*, 596 F. App'x at 910.  At step one, the ALJ determined that Delgado had not engaged in substantial gainful activity since March 21, 2016, Delgado's alleged onset date.  R. at 27.

At step two, the ALJ determined that Delgado suffered from one "severe" impairment, Chronic Obstructive Pulmonary Disease ("COPD") that significantly limited his ability to perform basic work activities as required by SSR 85-28.  *Id.*  The ALJ then considered Delgado's other physical impairments, including lung cancer, kidney problems, and abdominal issues.  *Id.*  As to Delgado's alleged lung cancer, the ALJ noted that his cancer was treated and resolved before his alleged onset date.  *Id.*  The ALJ further noted that Delgado underwent surgery in 2014 and his subsequent CT scans did not show any signs of malignancy in 2015, 2016, or 2017.  *Id.*  The ALJ also determined that Delgado's kidney problems were not severe.  *Id.*  The ALJ referenced Delgado's 2017 nephrology exam which noted no abnormalities and indicated that Delgado had normal gait, normal breathing, and no acute kidney problems.  *Id.*  Finally, the ALJ determined that Delgado's alleged abdominal issues posed only minimal limitations on his functioning and, were therefore not severe.  *Id.*

The ALJ also considered Delgado's mental impairments, specifically, his anxiety, depression, and alcohol use.  *Id.* at 28.  The ALJ determined that these mental impairments, considered singly or in combination, do not cause more than minimal limitations on Delgado's ability to perform basic mental work activities and are, therefore, not severe.  *Id.*  The ALJ also based her determination on Delgado's examinations and self-reports.  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity

of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[8]  *Id.* at 29.  Next, after considering the entire record, the ALJ determined Delgado's RFC and found that he was capable of performing "light work,"[9] as defined in 20 C.F.R. section 416.967(b), "limited to occasional climbing of ramps/stairs, stooping, kneeling, crawling, and crouching, but no ladders/ropes/scaffolds," can frequently balance, but must "avoid all exposure to concentrated fumes, odors, dust, and pulmonary irritants, and unprotected heights."  *Id.* at 29–30.

At step four, the ALJ found that Delgado can perform his past relevant work as a warehouse manager, as listed in the DOT, and as it is generally performed in the national economy.  *Id.* at 32.  The ALJ concluded that although Delgado performed his past work as a warehouse manager at the "heavy" exertional level, the job is generally performed at the light exertion level which Plaintiff could perform.  *Id.* at 32–33.  Accordingly, the ALJ found that Delgado was not disabled under sections 216(i) and 233(d) of the Social Security Act.  *Id.* at 33.[10]

---

[8] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. Such an individual will be considered disabled regardless of age, education, and work experience.  An individual's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.  *See* 20 C.F.R. §§ 416.925; 416.920(d); 416.926.

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

[10] Because the ALJ found that Delgado was able to return to his past relevant work, the ALJ was able to determine that Delgado was not disabled without having to proceed to step five of the five-step analysis. As such, the ALJ does not discuss whether Delgado is able to perform any type of gainful activity in the national economy.  20 C.F.R. § 416.920(a)(4)(iv).

## II.      STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew."  *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See Ellison*, 355 F.3d at 1275.  In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.  *Id.*  However, no presumption of validity attaches to the ALJ's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.    ANALYSIS

Plaintiff argues that the ALJ committed the following four errors: (1) the ALJ failed to characterize Claimant's past relevant work as a composite job, consisting of "warehouse manager" and "warehouse worker;" (2) the ALJ failed to provide good cause for according less than controlling weight to the treating physicians' opinions, and improperly discounted the opinion of the psychological consultative examiner; (3) the ALJ's RFC determination was not supported by substantial evidence; and (4) the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations.  ECF No. [12] at 2.  The undersigned considers each argument in turn.

#### A. Plaintiff's Past Relevant Work As A Warehouse Manager Was Not A Composite Job.

Plaintiff challenges the ALJ's classification of Plaintiff's past relevant work as warehouse manager and argues that Plaintiff's past relevant work was a composite job, as both a warehouse manager and warehouse worker.  ECF No. [12] at 6–7.  Specifically, in his Reply, Plaintiff argues that he was required to lift at the heavy exertion level for one-third to two-thirds of the eight-hour workday as a main duty of his past relevant job.  ECF No. [18] at 3–4.  That lifting requirement, Plaintiff continues, is not a significant element of the warehouse manager job, but rather, is a significant element of the warehouse worker job as defined by the DOT.  *Id.*; ECF No. [12] at 12. Given that, Plaintiff's past relevant work as a warehouse manager encompassed significant elements of two jobs, and therefore, was a composite job.  *Id.*; ECF No. [18] at 4.[11]  Plaintiff concludes that because composite jobs can only be performed as they were actually performed,

---

[11] Plaintiff advances the argument that the VE testified that the past relevant work was "akin to a 'working warehouse manager.'"  ECF No. [12] at 6; ECF No. [18] at 2.  However, the transcript does not support that position.  R. at 57.  The phrase "working warehouse manager" does not appear to be a reference to the job title at all, but rather was used in describing the fact that the exertion level, as he performed the job, was at a greater level than provided for in the DOT.

and in this case he performed it at the heavy exertion level, the ALJ's error warrants reversal as Plaintiff's RFC limits him to light work.

Defendant counters that the record does not support a finding that Plaintiff's job was a composite job. ECF No. [16] at 5. Defendant contends that the composite job he now proposes is inconsistent with the way he himself labeled his past work. *Id.* at 6. Indeed, Defendant points to the fact that Plaintiff described one previous job he had as a "warehouse manager," and another job he had as a "warehouse associate" as evidence that Plaintiff was aware of the duties of each position and could have reported if the duties of manager included or overlapped with the duties of a worker. *Id.* Moreover, Defendant argues that although Plaintiff lifted more weight than what is described in the DOT listing for warehouse manager, Plaintiff's role in lifting was not a major component and, therefore, does not render his past work as composite. *Id.* at 6–7.

According to the SSA's Program Operations Manual System ("POMS"),[12] a composite job is a job that has "significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS DI 25005.020. Furthermore, a claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." *Id.* Because there is no specific DOT listing for composite jobs, the ALJ, in determining whether a claimant can perform his past relevant work, is unable to look to the DOT for guidance on how the composite job is "generally performed." *Id.* Instead, if

---

[12] The Social Security Administration's POMS is the publicly available operating instructions for processing Social Security claims. *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). While the "administrative interpretations" contained within the POMS "are not products of formal rulemaking, they nevertheless warrant respect." *Id.*; *see Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive.").

a claimant's past relevant work is considered a composite job, then, at step four, the ALJ must determine whether the claimant can perform it as "actually performed" by claimant. *Id.*

In *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018), the Eleventh Circuit, in reviewing whether an ALJ had properly concluded that the plaintiff's past relevant work was not a composite job, noted the definition set out in the POMS. Specifically, the court considered whether the plaintiff, who had the burden of proof on the issue, had introduced evidence that hanging rent notices was a main duty of his prior work. *Id.* This was critical given that hanging rent notices was not a significant element of the telephone clerk job, the job the ALJ determined was his prior relevant work. *Id.* In finding that the plaintiff had not met his burden, the court noted that he had not introduced evidence about how much time he spent hanging notices or otherwise establishing that this duty was a "significant" element of his job. *Id.*

Here, Plaintiff's Motion provided little guidance as to what main duty of Plaintiff's past relevant work was not included as a significant element of the warehouse manager position as defined by the DOT. In his Reply, however, Plaintiff clarified that in his past work he was required to frequently lift, specifically one hundred and fifty pounds, and that lifting at that exertional level was not a significant element of the warehouse manager job as described in the DOT, but that it is an element of the warehouse worker job. ECF No. [18] at 4. It is Plaintiff's burden to show that frequent lifting at the heavy exertional level was a main duty of his prior work. The undersigned finds that Plaintiff cannot meet that burden.

Specifically, Plaintiff relies on a portion of the Work History Report ("Report") where Plaintiff indicated that as a warehouse manager, a job he held from January 2011 to October 2011, and then again from October 2004, to February 2009, he frequently (from one third to two thirds of the day) lifted one hundred and fifty pounds. R. at 207–08. The Report, completed by Isabel

Delgado, documents several factors regarding Plaintiff's past relevant work.  *Id.* at 203–10.

Notably, the section on which Plaintiff relies is a "check the box" section, instructing Plaintiff to

check a box indicating the weight that Plaintiff frequently lifted.  *Id.* at 207–08.  Although Plaintiff

checked the box that he frequently lifted that weight, it is important to look at the whole report.

The work history report instructs Plaintiff to write out and describe his past relevant work in a job

description section and provides a "remarks" section in the event Plaintiff needs additional space

to describe his job.  *Id.* at 210.  The work history reports completed by Plaintiff in connection with

his job as a manager describe his daily duties as "responsible for day to day management,

administration and reporting of all warehouse activities, including shipping and receiving, but not

limited to shipping and receiving, staff management, inventory control and accuracy, space

utilization, and safety related functions[,] coordinat[ing] the activities of all functions with the

facility to ensure customer delivery goals were met consistently."  *Id.* at 207–08, 210.  Notably,

Plaintiff did not mention "lifting" as part of his "warehouse manager" job description.  *Id.*  Indeed,

in response to the question on the form asking that he explain what he lifted, how far he carried it

and how often he did this, the response was only "boxes containing PVC pipes 16 ft. long."  *Id.* at

207–08.[13]    Although Plaintiff is certainly not required to use the words "composite job" in

describing his past work experience, the description he provided for his job as a manager lacked

the kind of information that would support the argument that it was a main duty of his job.  Indeed,

frequency alone, which in this case might have been as little as one third of the time, is not

---

[13] This description is in contrast the descriptions he provided for his other jobs as a "warehouse
associate."  *Id.* at 204, 206.  In those other jobs, Plaintiff reported that he lifted eight-foot fabric
rolls, for twenty-five feet, daily, *id.* at 206, and that he lifted photocopiers, for twenty feet, daily,
*id.* at 204.

sufficient to conclude that it was a main duty, especially in light of the other information in the form which fails to discuss lifting as part of his duties while listing over half a dozen duties.

In addition, at the hearing, Plaintiff's description of his job as warehouse manager also failed to indicate that "lifting" was one of his main duties.  Instead, when asked to describe his duties, he answered that he "had to oversee the employees," make sure that everything was in order, that everything was okay and that he had to help if help was needed.  R. at 46.  When asked if he had to lift anything, he said that he did and that the average weight of what he had to lift was eighty pounds and that he could not remember the heaviest thing he had to lift, but then stated that it was one hundred and fifty pounds.  *Id.* at 47.  In short, although he acknowledged that he had to lift during the workday, nothing about his testimony reflects that lifting was a main duty.

Instead, the undersigned finds that the evidence before the ALJ, who was relying on the VE's testimony, amply supported the finding that Plaintiff's past relevant work was that of warehouse manager.  Although Plaintiff performed that work at a higher exertion level, the only difference that is really at issue, this does not convert the job into a composite job.  Indeed, the VE specifically considered this and found that as a result of that difference Plaintiff performed the warehouse manager at a higher exertion level than as described in the DOT.  R. at 57.  Performing the job at a different exertional level, however, is not enough to find that lifting was a significant element or main duty of Plaintiff's previous job.  Without that showing, Plaintiff failed to meet his burden that his past relevant work was a composite job.  *See Smith*, 743 F. App'x at 954 (holding that "[claimant] had to prove that hanging rent notices was one of the 'main duties' of his position with the property management company.").  As such, the ALJ's finding is not error.

### B.  The ALJ Properly Discounted The Opinions Of The Treating
### Physicians And The Consultative Examiner.

Plaintiff argues that the ALJ failed to accord "controlling weight" to the opinions of Plaintiff's treating physicians, Dr. Juan F. Rodriguez-Moran ("Dr. Rodriguez-Moran"), Dr. Michael Valladares ("Dr. Vallardes"), and Dr. Antonio Uncar ("Dr. Uncar").  ECF No. [12] at 12. Plaintiff argues that the ALJ discounted the opinions of the treating physicians without providing sufficient reason.  *Id.*  Finally, Plaintiff argues that the ALJ improperly discounted the opinion of the psychological consultative examiner, Dr. Cristian Del Rio ("Dr. Del Rio").  *Id.* at 15.

Defendant argues that the ALJ "properly reviewed, considered, and evaluated the medical evidence and the medical opinions in this case."  ECF No. [16] at 7.  Specifically, Defendant contends that the ALJ considered "numerous factors including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty."  *Id.* at 8.

The "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when a physician's opinion is (1) conclusory, (2) contrary to or unsupported by the record evidence, or (3) inconsistent with the physician's own medical records. *See Carroll v. Comm'r, Soc. Sec. Admin.*, 453 F. App'x 889, 893 (11th Cir. 2011). "Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain."  *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007).  "When an ALJ articulates specific reasons for declining to accord the opinion of a treating or examining physician controlling weight and those reasons are supported

by substantial evidence, there is no reversible error." *Carroll*, 453 F. App'x at 893 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Indeed, a court "will not second guess the ALJ about the weight [a] treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter*, 808 F.3d at 823.

Here, Plaintiff submitted medical opinions for three treating physicians: Dr. Rodriguez-Moran, Dr. Valladares and Dr. Uncar.  The Court will now address the ALJ's review of each of the medical opinions at issue and determine whether substantial evidence supported the ALJ's decision.  First, Dr. Rodriguez-Moran opined that Plaintiff can never lift any weight frequently, can lift only five pounds occasionally, can continuously stand for only four hours, and can continuously sit for only four hours.  R. at 445, 449.  The ALJ assigned "little weight" to Dr. Rodriguez-Moran's opinion because his opinion was "not supported by the record and internally inconsistent."  R. at 31.  During oral argument in the matter, Defendant argued that the ALJ's finding that the opinion was internally inconsistent was because Dr. Rodriguez-Moran had found that Plaintiff could only work for six hours although he could sit or stand for four hours at a time. The undersigned does not find that necessarily inconsistent.  Plaintiff could do each activity for four hours, but in no event do them in combination for more than six so that he could do a six-hour day with the split between sitting and standing being four and two or three and three hours each, but not, for example five and one hours each.  Given no other basis for what was internally inconsistent in the opinion, the undersigned turns to the second reason provided for affording the medical opinion little weight.

Here, the undersigned does find that substantial evidence supports the ALJ's finding that Dr. Rodriguez-Moran's opinion is not supported by the record.  The ALJ noted the numerous physical and mental examination findings that suggested Plaintiff's mental and physical

16

functioning was normal.  *Id.* at 30–32.  The ALJ referenced the March 29, 2016, physical exam which returned a finding indicating that Plaintiff's physical was functionally normal.  *Id.* at 30, 279.  Specifically, that examination found that Plaintiff was physically normal in all respects, including his psychiatric, neurological, extremity, and constitutional structures.  *Id.* at 279.  The exam described Plaintiff as "well developed" and "oriented to time, place, person, and situation." *Id.*  Moreover, in April 2016, Plaintiff appeared for a physical examination.  *Id.* at 30, 611–12.  At this examination, Plaintiff reported depression and anxiety but refused any medications to treat these symptoms.  *Id.* at 611.  Moreover, despite observing rhonchi and crackles in his lungs, the examining physician described Plaintiff as a "well-developed man in no acute distress."  *Id.*  In August 2016, Plaintiff returned for another physical evaluation where Plaintiff self-reported that he was not depressed.  *Id.* at 30, 413–16.  This evaluation also reflects that Plaintiff is physically and mentally normal, indicating that Plaintiff's attitude was normal, mood euthymic, and affect normal.  *Id.* at 416.  The ALJ also noted that on November 2016, Plaintiff was smoking half a pack of cigarettes, and developed reactive leukocytosis due to chronic inflammation from smoking.  *Id.* at 31, 609.  Nevertheless, the ALJ also noted that Plaintiff's July 12, 2016 chest CT scans showed no evidence of lung cancer malignancy.  *Id.*  The ALJ further noted that Plaintiff's nephrology exam of February 2017, noted no abnormalities.  *Id.* at 27, 31, 453.  The ALJ observed that Plaintiff had normal gait, and normal breathing.  *Id.*  The ALJ also found that Plaintiff's overall abdominal issues were non-severe and posed only minimal limitations on functioning.  *Id.* at 27, 453, 609.

Second, Dr. Valladares opined that Plaintiff can stand for only fifteen minutes and can only lift five pounds, concluding that Plaintiff can never work.  R. at 596.  The ALJ accorded "no weight" to Dr. Vallardes' opinion because it was "not supported by the claimant's normal examinations."  *Id.* at 32.  The undersigned finds that substantial evidence supports the ALJ's

assessment.  As noted above, the ALJ had already listed the normal findings in various medical reports.  Specifically, one of those physical exams was performed by Dr. Vallardes in July and November 2017, indicating Plaintiff's mental and physical dispositions were functionally normal. *Id.* at 31, 509, 528–29.  Dr. Vallardes indicated in these exams that Plaintiff was "not in acute distress," "well nourished," and overall physically normal.  *Id.* at 509, 528–29.  Moreover, Dr. Vallardes indicated that Plaintiff's mental status was normal, finding that Plaintiff was "oriented [] with appropriate mood and affect," "affect and attention span and ability up," and no "impairment of recent or remote memory."  *Id.* at 528.  In sum, there appears to be no support in the record for Dr. Vallardes' opinion, finding that Plaintiff could not work at all.

Third, Dr. Uncar's opinion stated that Plaintiff "has been depressed and anxious in the past."  *Id.* at 688.  The ALJ provided "little weight" to Dr. Uncar's opinion because it was vague and failed to provide any limitation on Plaintiff's overall functioning.  *Id.* at 32.  The undersigned finds that the ALJ's decision was supported by substantial evidence.  The extent of Dr. Uncar's opinion was that Plaintiff had been "anxious and depressed in the past."  *Id.* at 688.  The report had no assessment or determination of Plaintiff's functional limitations.  As an initial matter, it does not appear that this is a medical opinion for which any weight needed to be given. *Id.* "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  Indeed, a short statement revealing nothing more than two general symptoms that Plaintiff had complained of in the past hardly, if at all, constitutes an opinion about the "nature and severity" of Plaintiff's impairment.  Nevertheless, even if it the one report was a medical opinion, the opinion itself is so

vague that the undersigned is hard pressed to find what about that opinion would be inconsistent with the ALJ's finding.  Indeed, the ALJ considered his depression and anxiety and found that they did not present any limitations.  R. at 28.  Nothing in this medical opinion is inconsistent with that finding.  As such, the undersigned finds that the ALJ's decision to accord little weight to this opinion is supported by substantial evidence, and in any event, any error in making that determination would be harmless as the opinion of Dr. Uncar is consistent with the ALJ's opinion.

Finally, Plaintiff argues that the ALJ improperly discounted the opinion of the psychological consultative examiner, Dr. Del Rio.  ECF No. [12] at 15.  Plaintiff contends that the ALJ failed to assess Dr. Del Rio's medical opinion using the six factors provided in C.F.R. § 404.1527(c)(1)–(6).  *Id.*  Defendant counters that the ALJ properly considered Dr. Del Rio's opinion, and found that it was unsupported by substantial evidence.  ECF No [16] at 12–13.

An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's "opinion is with the record as a whole"; and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).  These factors apply to both examining and non-examining physicians.  *Id.*  The ALJ must state with particularity the weight given to different medical opinions and the reasons therefore.  *See Winschel*, 631 F.3d at 1179.  The opinion of a one-time examiner is not entitled to deference or special consideration.  *See Denomme v. Comm'r. Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

Dr. Del Rio examined Plaintiff one time on July 6, 2016.  R. 410–12.  The ALJ noted that Dr. Del Rio diagnosed Plaintiff with panic disorder, based on Plaintiff's self-reports of panic, and the need for assistance.  R. at 31, 410–11.  The ALJ also noted that Dr. Del Rio opined that Plaintiff had impaired social functioning and problems with concentration.  *Id*. at 31, 411.  After considering Dr. Del Rio's report, the ALJ gave little weight to his opinions because the opinions were not supported by the record.  *Id.* at 31.  The undersigned finds no error in the ALJ's determination.

Plaintiff was referred to Dr. Del Rio for a general clinical evaluation, where Dr. Del Rio performed a one-time general psychological exam on Plaintiff.  *Id.* at 410–11.  As a one-time examiner, Dr. Del Rio's opinions were not entitled to deference or special consideration.  *See Denomme*, 518 F. App'x at 878.  Moreover, the ALJ's decision indicates that the ALJ considered the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c).  Specifically, the ALJ considered whether the medical evidence of record supports Dr. Del Rio's opinion, and how consistent Dr. Del Rio's opinion was with the record.  R. at 31.  Upon consideration, the ALJ found that the medical record and the record as a whole, including Plaintiff's functional mental limitation did not support Dr. Del Rio's opinion.  *Id.* at 30–31.  The ALJ considered that Plaintiff had no more than a mild limitation in functional area of interacting.  *Id.* at 28.  The ALJ substantiated this finding by noting that Plaintiff had little if any social deficits when communicating and interacting with his treating and examining sources.  *Id.* at 28, 416, 427, 453, 458, 482.  In fact, many of Plaintiff's mental exams indicated that Plaintiff was oriented to time, place, person, and situation; had normal insight, normal judgment, and normal affect; and was well nourished and well developed.  *Id.* at 416, 427, 453, 458, 482

In terms of concentration, the ALJ also found that Dr. Del Rio's opinion was not supported by the record.  *Id.* at 31  The ALJ noted that "there is no indication of disordered thought processes,

cognitive dysfunction, or intellectual deficits." *Id.* at 29.  The ALJ considered that Plaintiff was "consistently fully oriented and cognitively intact." *Id.*  In making this finding, the ALJ stated that "[f]requently benign mental status exams show sufficient attention/concentration abilities to work at an appropriate and reasonable pace. . . " *Id.* at 29; *see* 416, 427, 458, 510, 528.  For instance, the ALJ refers to Dr. Vallardes' mental status exam, finding that Plaintiff was "oriented with appropriate mood and affect," "ability to concentrate," and no "impairment of recent or remote memory." *Id.* at 31–32, 528.  In sum, the ALJ's decision clearly stated numerous reasons for discounting Dr. Del Rio's opinion.

The Court's inquiry is limited to whether substantial evidence supports the ALJ's findings. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Winschel*, 631 F.3d at 1178.  As such, the undersigned is charged only with determining if the ALJ's opinion was supported by substantial evidence—regardless of whether the evidence may have also supported a different finding.  The undersigned finds that the ALJ decision to discount Dr. Del Rio's opinion was supported by substantial evidence in the record.

### C.  The RFC Is Supported By Substantial Evidence.

Plaintiff argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to consider Plaintiff's non-severe impairments when determining Plaintiff's RFC.  ECF No. [18] at 14.  Plaintiff further contends that the ALJ failed to adequately "account for the treating sources' limitations on prolonged standing, lifting, and carrying, and the examining source's limitations on sustained attention, among other things." *Id.*

Defendant argues that the ALJ's finding of at least one severe impairment is enough to satisfy step two, and "an ALJ is not required to identify every severe impairment at step two." ECF No. [16] at 14.  This point does not appear to be at issue.  ECF No. [18] at 14.  Next, Defendant

argues that the assessment of Plaintiff's RFC is within the province of the ALJ and not doctors. *Id.* at 13.   Specifically, Defendant contends that the "ALJ properly considered the relevant evidence in assessing Plaintiff's RFC," and "Plaintiff failed to prove that he had additional or disabling limitations  *Id.* at 14.  As such, Defendant argues that "the record, as discussed by the ALJ, provides substantial evidence to support the ALJ's assessment of Plaintiff's RFC."  *Id.*

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 776 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Lewis*, 125 F.3d at 1440).  "The ALJ makes this assessment by considering the claimant's physical, mental, and other abilities affected by the impairments."  *Id.* (citing 20 C.F.R. § 404.1545(b)–(d)).  The ALJ also assesses a claimant's residual functional capacity based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  However, administrative law judges "are not required to refer to every single piece of evidence presented to them in their decisions." *Williams v. Comm'r, Soc. Sec. Admin.*, 805 Fed. App'x 692, 695 (11th Cir. 2020) (citing *Dyer*, 395 F.3d at 1211).  "[T]he task of determining a claimant's [RFC]…is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Here, after finding that Plaintiff had "severe" COPD, the ALJ determined that Plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. section 416.967(b).  R. at 27, 29–30. Nevertheless, the ALJ determined that Delgado is "limited to occasional climbing of ramps/stairs, stooping, kneeling, crawling, and crouching, but no ladders/ropes/scaffolds. He can frequently balance. He must avoid all exposure to concentrated fumes, odors, dust, and pulmonary irritants, and unprotected heights."  *Id.* at 29–30.  A review of the ALJ's opinion shows that substantial evidence supported that conclusion.

Although the ALJ only found Plaintiff to have one severe impairment, the ALJ also considered Plaintiff's non-severe limitations in determining Plaintiff's RFC. *Id.* at 27. As to Delgado's lung cancer, the ALJ noted that his previous case of lung cancer had resolved before his alleged onset date. *Id.* Moreover, the ALJ further noted that Delgado underwent surgery in 2014 and his subsequent CT scans did not show any signs of malignancy in 2015, 2016, or 2017. *Id.* at 27, 277, 427, 462. The ALJ also determined that Delgado's kidney problems were not severe. *Id.* at 27. The ALJ considered Plaintiff's physical and mental exam conducted on March 29, 2016 which revealed Plaintiff was physically and mentally normal. *Id.* at 30, 279. The ALJ also considered Delgado's 2017 nephrology exam which noted no abnormalities and indicated that Delgado had normal gait, normal breathing, and no acute kidney problems. *Id.* at 31, 453.

Moreover, the ALJ also considered Delgado's medically determinable mental impairments such as anxiety, depression, and alcohol use. *Id.* at 28. The ALJ determined that these mental impairments, considered singly or in combination, do not cause more than minimal limitations on Delgado's ability to perform basic mental work activities. *Id.* The ALJ based his determination on Delgado's examinations and self-reports. *Id.* For instance, the ALJ considered that Plaintiff "had developed reactive leukocytosis due to chronic inflammation, but his July 12, 2016 chest CT showed no evidence of lung cancer malignancy." *Id.* at 31; *see* 609. In fact, the ALJ noted that "[h]e was denying shortness of breath or cough. His lungs were clear, and he was not in respiratory distress. *Id.* at 31, 609. The ALJ also balanced Plaintiff's allegations of physical limitations with Plaintiff's testimony that he was able to visit the family, and attend his appointments. *Id.* at 32, 95. The ALJ considered these inconsistencies and determined that Plaintiff was "functioning at a greater level than alleged." *Id.*

Plaintiff claims that the ALJ did not discuss all of Plaintiff's non-severe impairments and, therefore, the ALJ's RFC determination is not supported by substantial evidence. ECF No. [18] at 14. This argument is unpersuasive. The ALJ is "not required to refer to every single piece of evidence presented to them in their decision." *Dyer*, 395 F.3d at 1211. Here, the ALJ considered numerous non-severe impairments, including Plaintiff's resolved lung cancer, kidney problems, and abdominal issues. R. at 27. Specifically, the ALJ referenced Delgado's 2017 nephrology exam which noted no abnormalities and indicated that Delgado had normal gait, normal breathing, and no acute kidney problems. *Id.* at 27, 453. The ALJ also determined that Delgado's alleged abdominal issues posed only minimal limitations on his functioning. *Id.* at 27.

Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not properly consider the treating source's opinions. ECF No. [18] at 14. This argument, as noted above, also fails. Specifically, the ALJ considered the opinions of Dr. Del Rio, Dr. Rodriguez-Moran, Dr. Valladares, and Dr. Uncar. R. at 27–28. The ALJ assigned each opinion either little weight or no weight, a decision supported by substantial evidence. *Id.* In sum, the undersigned finds that the ALJ properly evaluated the medical opinions and Plaintiff's testimony in determining the RFC, and such determination was supported by substantial evidence.

### D. The ALJ's Decision to Discount Plaintiff's Allegations of Symptoms and Limitations Was Supported By Substantial Evidence.

Plaintiff contends that the ALJ improperly discounted his alleged symptoms and limitations. ECF No. [18] at 14–15. Defendant counters that the ALJ considered Plaintiff's alleged symptoms and properly found that they were inconsistent with objective evidence in the record. ECF No. [16] at 16–17. For the reasons stated below, the undersigned finds that the ALJ's finding as to Plaintiff's subjective complaints was supported by substantial evidence.

"[C]redibility determinations are the province of the ALJ" and a court may not disturb a clearly articulated credibility finding supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see Foote*, 67 F.3d at 1562.  In considering the intensity, persistence, and limiting effects of the alleged pain, the ALJ will consider whether there are any inconsistencies between the plaintiff's statements, the medical record, and other evidence of record.  *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also* SSR 16-3p.  "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms [. . .] the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1562) (internal quotations omitted).

The Eleventh Circuit "has established a three-part pain test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically, the Eleventh Circuit's standard requires:

> evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.; *see Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court or this Court to

conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210–11 (citing *Foote*, 67 F.3d at 1561) (internal quotations omitted).

Here, the ALJ determined that Plaintiff had medically determinable impairments, including COPD, kidney problems, abdominal issues, anxiety, depression, and alcohol abuse.  R. at 27–28. Further, the ALJ also noted that such impairments "could reasonably be expected to cause the alleged symptoms.  *Id.* at 30.  Nevertheless, the ALJ concluded that Plaintiff's subjective allegations regarding the intensity, persistence and limiting effects of Plaintiff's claimed symptoms "are not entirely consistent with the medical evidence and other evidence in the record. . . ." *Id.* The ALJ supported this decision by citing to Plaintiff's consistently normal medical exams.  *Id.* at 30–32, 279, 415–16, 427, 453, 458, 482, 509, 528–29, 609–11.  As noted above, the ALJ's conclusions with respect to the medical records were supported by substantial evidence and were properly relied upon here.  The ALJ also observed that physical examinations had failed to reveal any muscle wasting or atrophy, which the ALJ noted would be expected considering Plaintiff's allegations of severe physical limitations.  *Id.* at 32.  The ALJ also considered Plaintiff's ability to visit family and attend appointments and determined that such activities suggest that Plaintiff is "functioning at a greater level than alleged." *Id.* at 32, 95.[14]  *See Conner v. Astrue*, 415 Fed. Appx. 992, 995 (11th Cir. 2011) ("claimant's daily activities may be considered in evaluating and discrediting a claimant's subjected complaints").  Given the undersigned's earlier findings with respect to the medical records and the ALJ's articulated reasons for discounting Claimant's

---

[14] The Commissioner notes that the ALJ was incorrect as to Plaintiff's ability to prepare meals. ECF No. [16] at 17 n.3.  Specifically, Plaintiff's testimony at the hearing was that his wife prepared his meals.  *Id.* at 51.  Even if that point were removed from the consideration, the remaining observations were correct, and along with the remaining findings, the ALJ's opinion is supported by substantial evidence.

statements regarding his symptoms, the Court finds that the ALJ's decision to discount Claimant's statements was supported by substantial evidence.

## IV.    RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, **DENIED,** that Defendant's Motion for Summary Judgment be **GRANTED.**

## V.    OBJECTIONS

Pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Any request for an extension of this deadline must be made within five (5) calendar days from the date of this Order.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report and Recommendation to which the parties failed to object.  28 U.S.C. § 636(b)(1); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of August, 2020.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE